UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

K.S., by and through DAVID and
ALISHA SCOLES, as parents and
natural guardians,

        Plaintiff,

 -vs-

SCHOOL BOARD OF ORANGE
COUNTY, FLORIDA,

        Defendants.

CASE NO.:

## COMPLAINT

PLAINTIFF, K.S., a minor girl, by and through DAVID and ALISHA SCOLES as parents and natural guardians, hereby brings this civil action for damages against DEFENDANT, SCHOOL BOARD OF ORANGE COUNTY, FLORIDA and states the following:

## INTRODUCTION

1. During the 2020-2021 school year, K.S. was six years old and in first grade. Prior to this incident, she was a happy, thriving child.

2. On January 15, 2021, K.S.'s life changed.

3. K.S. asked her art teacher to be allowed to use the bathroom.

4. The art teacher asked another student, S.C., to go with K.S. to the bathroom.

5. The children were in the bathroom an extended amount of time, but the

art teacher never came to check on them.

6. K.S., was a petite child and had a broken arm with a cast at this time. While in the bathroom, S.C. physically and sexually assaulted and battered K.S. in a bathroom stall by dragging her into the stall, violently and aggressively pressed and rubbed her vaginal area, slammed her head into the floor on one or more occasions, covered her mouth because the screaming was "annoying," and digitally penetrated her.

7. This ended when the student's first grade teacher, Ms. Carnovali, realized the girls had been missing for a long time, entered the bathroom to find them, and observed both girls exit the same stall.

8. Ms. Carnovali asked the girls if they had kept their hands to themselves, to which both replied no.

9. Ms. Carnovali brought this to the school administration's attention and a Title IX investigation commenced.

10. The School Board policies state that all students attending Orange County Public Schools shall be treated equally and shall be offered a learning environment free from sexual harassment.[1]

11. Mary Clark, the Assistant Principal for another Orange County Public

---

[1] *Title IX Sexual Harassment Complaint and Investigation Procedures*, Equal Educational Opportunities Policy, Orange County School Board (Aug. 11, 2020), available at https://cdnsm5-ss15.sharpschool.com/UserFiles/Servers/Server_54619/File/School%20Board/Policies/Board%20Approved/JB%20Equal%20Educational%20Opportunities%20(8-11-2020).pdf.

School, was appointed as the Title IX Investigator for this case.

12. S.C. has made admissions that she touched K.S.'s vagina, had shoved K.S.'s head to the floor, and that K.S. asked her to stop but she did not do so.

13. K.S. notified the Title IX investigator that S.C. violently pressed and rubbed her vaginal area, that she told S.C. to stop but was ignored, that she slammed her head into the floor, and that she was digitally penetrated.

14. A grievance was raised about the Title IX procedures because Ms. Clarke failed to interview several key individuals with knowledge of the incident; specifically, she did not interview the School Resource Officer, despite the fact that he interviewed S.C., the art teacher that selected S.C. to accompany K.S. to the bathroom and disregarded the length of time the two girls were in the bathroom, and Ms. Tamira Hutchinson,[2] despite the fact that she interviewed S.C. about what happened.

15. Ms. Clark allowed the witnesses that did provide statements to write generalized statements that lacked the necessary detail and specifics for any investigation.

16. Parents for both children wrote responses criticizing this lack of necessary detail as unacceptably perfunctory and that it constituted a failure to adhere to the Title IX standards.

17. Ultimately, the Investigation concluded that S.C. had violated the code of conduct for her actions against K.S. in the bathroom.

---

[2] After this was grieved, Ms. Hutchinson was later interviewed.

18. At the conclusion of the investigation, the School Board provided no reasonable supportive measures to assist K.S. heal from this horrific experience.

19. In the immediate aftermath of the assault, David and Alisha Scoles requested alternative options to continue K.S.'s education in a safe environment by separating K.S. and S.C. at school, such as a class schedule modification. David and Alisha Scoles also requested that K.S. be provided counseling.

20. School Board refused to modify the class schedule to separate K.S. and S.C. or to provide counseling to K.S.

21. In order to protect their child when the School Board refused to reasonably modify the class schedule for S.C. and K.S., David and Alisha Scoles had K.S. begin attending her classes virtually.

22. Approximately two months later, K.S. was in a virtual learning classroom when she was suddenly and without warning placed in a virtual classroom alone with S.C.

23. This sudden and unexpected event caused K.S. extraordinary amounts of anguish, anxiety, stress, fear, and harm.

24. School Board violated Title IX when it was deliberately indifferent in its response to this investigation, and it was negligent when it breached its duty of care to K.S.

## PARTIES

### A. Plaintiff

25. K.S. is a resident of Florida and is not *sui juris* by virtue of her minority.

At all relevant times, K.S. was six years old and a first grade student at Sunset Park Elementary School ("SPES").

26. This action is brought anonymously to protect the identity of K.S. as this matter concerns the sexual and physical assault and battery of a minor.

27. K.S.'s right to privacy and personal security outweigh the public interest in knowing her identification.

28. It is in the public's interest to give anonymity to child victims and abuse survivors so that other victims will feel the ability to come forward and not be fearful that their identity will be publicized.

29. K.S.'s minority and legitimate concerns for privacy outweigh any prejudice to Defendants or the public by allowing Plaintiff to proceed anonymously.

### B. Defendants

30. Defendant, the School Board of Orange County, Florida ("School Board"), is a political subdivision or agency of Orange County, Florida. The School Board operates and maintains SPES in Orange County, Florida. K.S. was a student at SPES at all relevant times.

### JURISDICTION AND VENUE

31. The court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1681(a).

32. The Court has venue of this action under 28 U.S.C. § 1391 as the Defendant is located in this District and a substantial part of the events and omissions giving rise to the claim occurred in this District.

33. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because all the other claims are related to the claims with original jurisdiction and form part of the same case or controversy.

34. All conditions precedent to bringing the state law claims in this lawsuit have been satisfied and/or waived. On or about May 23, 2022, Plaintiff served a letter pursuant to § 768.28, Florida Statutes, to School Board of Orange County, formally advising the School Board as to Plaintiff's negligence claim arising from the assault described in the lawsuit. The statutory waiting period for Plaintiffs to assert a negligence claim against the School Board of Orange County has since expired.

## FACTUAL ALLEGATIONS

35. At all relevant times to this lawsuit, K.S. was attending first grade at SPES.

36. K.S. had a right to be free from injury while at school.

37. K.S. had a right to bodily integrity while at school.

38. K.S. has to right to a not be subjected to physical or sexual harassment or abuse while at school.

39. School Board owes K.S. a duty to reasonably ensure her safety, to include properly training the teachers and staff to deal with students that had known concerns that could affect the safety of others, such as S.C.

### *S.C.'s Traumatic Past Created A Risk For Other Students*

40. S.C. was a minor child that entered foster care at age three and a half and was abused and neglected since birth. S.C. experienced severe trauma at an early age

6

and was removed from her biological parents at five and a half years old.[3]

41. Upon information and belief, approximately half a year prior to this incident, S.C. moved in with Stephanie Wyka Connell and Andrew Connell, her adoptive parents.

42. Upon information and belief, Andrew Connell was the Assistant Principal at SPES in 2020-2021.

43. Upon information and belief, Stephanie Wkya Connell was previously an Assistant Principal with Orange County Public Schools and was the Director of Evaluation for OCPS at the time of this incident.

44. As a result of her early life trauma, S.C. developed a medical condition that caused her to have highly impulsive behavior and trauma related conduct.[4]

45. At the time of incident subject to this complaint, S.C. was in the middle of a short adjustment period as her body adjusted to new medication and/or treatment.[5]

46. While in this adjustment period, the school personnel witnessed and was informed that S.C. was exhibiting increased intensity in her behaviors and outbursts.[6]

47. Such increased behavioral outbursts caused a safety concern for the other students around S.C.

48. Upon information and belief, despite knowing this risk factor, school

---

[3] Exhibit H, S.C.'s Response to Evidence, Title IX Investigation (dated 2/24/2021).
[4] Id.
[5] Id.
[6] Id.

administration either did not inform the teachers that worked with S.C. of this heightened risk factor, or those teacher(s) deliberately were indifferent to the risk.

49. Upon information and belief, despite knowing this risk factor, the teachers working with S.C. were not given additional training on how to address these risk factors and concerns.

50. With the knowledge of S.C.'s prior abuse and trauma, the psychological impact on her mental state, her mental health diagnosis and behavioral observations, and the heightened intensity of behavior and outburst, it was clear that S.C. never should have been placed in an environment where she would be alone with any other student.

### *The Physical and Sexual Assault and Battery of K.S.*

51. On January 15, 2021, K.S. asked to use the bathroom.

52. School practice, policy, or custom is that a student using the bathroom cannot go to the bathroom alone and K.S. was sent to the bathroom with a seven (7) year old student, S.C.

53. K.S. had a broken arm that was in a cast at the time, and was substantially smaller in stature than S.C.

54. At or about 10:48 AM, the two girls entered the bathroom together.

55. School practice, policy, or custom requires that only one student enters the bathroom at a time, presumably for privacy and safety.

56. S.C. attempted to enter the bathroom at the same time as K.S.

57. K.S. told S.C. she was not allowed to enter the bathroom, but S.C.

entered the bathroom while K.S. was inside.

58. K.S. entered a stall alone and locked the door.

59. S.C. attempted to enter the stall while K.S. was using the restroom, demanding to be let in.

60. When K.S. was finished using the restroom, she exited the stall and was washing her hands when S.C. forced her to go back in the stall with her.

61. S.C. forcefully pulled down K.S.'s underwear and pants.

62. S.C. pushed K.S. down onto the toilet seat, told her she would show her a "trick." Then S.C. took toilet paper and began to violently and aggressively rub K.S.'s vagina and buttocks while she was seated on the toilet seat.

63. Next, S.C. began rubbing and pressing on her vaginal area with her bare hand, aggressively touching K.S.'s vaginal area and buttocks.

64. This touching was unwanted and caused K.S. extraordinary physical pain.

65. Both before and during this encounter, K.S. physically resisted S.C.'s attack, and screamed at S.C. to "Stop!" multiple times.

66. S.C. did not stop. Instead, S.C. shoved K.S. onto the floor and smashed K.S.'s head against the floor on one or more occasions.

67. K.S. could not fight S.C. because she had a broken arm in a cast.

68. While on the floor, S.C. digitally penetrated K.S.'s vagina and/or anus and she felt S.C.'s hand "inside [her] stomach."

69. K.S. kept screaming at S.C. to "Stop!"

70. Instead of stopping, S.C. covered K.S.'s mouth with her hand, and told her to stop because she was "being annoying."

71. The girls were in the bathroom, unsupervised, for eleven (11) minutes before any teacher came to look for them.

72. Ms. Patricia Carnovali, the first grade teacher, came to retrieve her class from the art class, realized that K.S. and S.C. were not with the class, and asked the art teacher where they were.

73. The art teacher stated that they had only been gone for "two minutes" when in reality, it had been far longer.

74. Ms. Carnovali went to the bathroom to check on them at or about 10:59 AM and found the girls in the same stall.

75. Both girls exited the stall when Ms. Caronvali entered the bathroom.

76. Ms. Carnovali asked the girls if they kept their hands to themselves, to which they both replied "no."

77. S.C. admitted in part to assaulting and battering K.S. to Ms. Carnovali.

78. Ms. Carnovali and both girls exited the bathroom at or about 11:01 AM, a full thirteen (13) minutes after they entered it.

79. At some point that same day, the children were individually taken to speak to the school guidance counselor.

*Police & DCF Involvement*

80. On January 15, 2021, the School Resource Officer was informed about the incident in the bathroom and interviewed S.C., who admitted she had done

something "bad" while in the bathroom with K.S.

81. The Department of Children and Families was contacted and initiated a case as well.

*The Title IX Investigation*

82. The School Board policies state that all students attending Orange County Public Schools ("OCPS") shall be treated equally and shall be offered a learning environment free from sexual harassment.[7]

83. The same policy requires that supportive measures be taken, meaning "non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge" for the complainant or respondent.[8]

84. During the Title IX Investigation, a grievance may be raised if the School Board failed to follow the Title IX protocols. Among other things, the grievance process must:

    a. Provide remedies to the complainant when a determination of responsibility has been made against the respondent;

    b. Require an objective evaluation of all relevant evidence; and

    c. Ensure the School-based Title IX investigator, decision-maker, and appeals decision-maker are free from any conflicts of interest or bias for

---

[7] *Title IX Sexual Harassment Complaint and Investigation Procedures*, Equal Educational Opportunities Policy, Orange County School Board (Aug. 11, 2020), available at https://cdnsm5-ss15.sharpschool.com/UserFiles/Servers/Server_54619/File/School%20Board/Policies/Board%20Approved/JB%20Equal%20Educational%20Opportunities%20(8-11-2020).pdf.
[8] Id.

11

or against any complainants or respondent.

85. On January 19, 2021, a Title IX investigation commenced.

86. Mary Clark, the Assistant Principal for another Orange County Public School, was appointed as the Title IX Investigator for this case.

87. As part of her investigation, Ms. Clark interviewed the following people:

| Date of Interview | Name of Witness | Role in Case |
|---|---|---|
| 01/21/21 | S.C. (with parent(s)) | Respondent |
| 01/27/21 | K.S.(with parents and attorney) | Complainant |
| 01/28/21 or 01/29/21 | Patricia Carnovali | First Grade Teacher |
| 02/02/21 | Myla Cavanaugh | Counselor |
| 02/10/21 | Tamira Hutchinson | Assistant Principal |

88. Ms. Clark did not interview the School Resource Officer, despite the fact that he interviewed S.C.

89. Ms. Clark did not interview the art teacher that selected S.C. to accompany K.S. to the bathroom and disregarded the length of time the two girls were in the bathroom.

90. Ms. Clark did not initially interview Ms. Tamira Hutchinson, despite the fact that she interviewed S.C. about what happened.

91. Later, after Mr. and Mrs. Scoles identified that Ms. Hutchinson should be interviewed because she spoke to S.C. about what happened, her supplemental

statement was added. The statement lacked any specificity about what S.C. stated.

92. Ms. Clark did not require the eyewitnesses to provide detailed statements; in fact, most of the statements were a few lines and contained generalizations instead of specific facts.

93. Upon information and belief, Ms. Clark did not require the memorialization of one or more admissions that S.C. made to various witnesses.

94. Ms. Clark concerningly stated that she was "not qualified to define rape."

95. Parents for both children wrote responses criticizing this lack of necessary detail as unacceptably perfunctory and that it constituted a failure to adhere to the Title IX standards.

96. Upon information and belief, Ms. Clark is friends or friendly with S.C.'s adoptive mother, which prevents the evaluation of evidence from being objective. Furthermore, this would inherently create a conflict of interest and/or bias in the case.

97. When K.S.'s parents expressed concern about the thoroughness and objectivity of the investigation and repeatedly requested a new investigator, these requests were ignored or denied.

98. The Investigation ultimately concluded that S.C. had violated the code of conduct for her actions against K.S. in the bathroom.

### *Supportive Measures*

99. At the conclusion of the investigation, the School Board provided no reasonable supportive measures to assist K.S. heal from this horrific experience.

100. In the immediate aftermath of the assault, Mr. and Mrs. Scoles requested

alternative options to continue K.S.'s education in a safe environment by separating K.S. and S.C. at school, such as a class schedule modification.

101. Mr. and Mrs. Scoles also requested that K.S. be provided counseling.

102. School Board refused to modify the class schedule and separate K.S. and S.C.

103. Consequently, this experience caused, among other things, K.S. to have a fear of using public bathrooms which trigger panic attacks.

104. K.S. was also terrified of running into S.C. in school.

105. In order to protect their child when the School Board refused to reasonably modify the class schedule for S.C. and K.S., David and Alisha Scoles had K.S. begin attending her classes virtually.

106. As a result, K.S. became isolated from her peers and was not engaged in normal child interactions due to the failure of the school to provide a safe learning environment.

107. Approximately two months later, K.S. was in a virtual learning classroom when she was suddenly and without warning placed in a virtual classroom alone with S.C.

108. This sudden and unexpected event caused K.S. extraordinary amounts of anguish, anxiety, stress, fear, and harm.

109. In addition, at the conclusion of DCF's investigation, they found that there was reason to provide counseling to K.S. and that she would benefit from it, but they refused to provide it because they assumed that Mr. and Mrs. Scoles had

insurance that could pay for the counseling.

110. This assumption about the Scoles' insurance was incorrect. The Scoles' insurance policy only covered three (3) sessions and required the family to pay out of pocket if they wished to pursue more counseling beyond the three (3) sessions.

111. K.S. needed more than three (3) counseling sessions to recover and heal from the trauma she suffered.

112. Mr. and Mrs. Scoles communicated this to School Board and DCF.

113. The School Board refused to provide K.S. with counseling services.

114. Plaintiffs have retained the undersigned counsel and have agreed to pay reasonable attorneys' fees.

## COUNT I:
### Violation of Title IX, Deliberate Indifference in Response

115. Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

116. During all relevant times to this complaint, School Board acted under color of state law.

117. At all relevant times, K.S. was enrolled at SPES, which is a school under the control and supervision of School Board.

118. K.S., a first grade student at SPES, reported to the school administration that she had been physically and sexually assaulted and battered by another student, S.C.

119. K.S. had a right to not be subject to physical and/or sexual harassment

or abuse while she participated in the school's education program or activity.

120. K.S. had a right to bodily integrity while she participated in the school's education program or activity.

121. A Title IX investigation was commenced four (4) days later regarding the abuse suffered by K.S.

122. The Investigation did not follow the Title IX protocols or requirements to conduct a neutral, unbiased, fair, and thorough investigation.

123. The Investigation ultimately concluded that S.C. had violated the School Board's code of conduct for her actions against K.S. in the bathroom, resulting in harm to K.S.

124. Given that K.S. suffered both a physical and sexual assault and battery, the School Board had a duty to provide supportive measures after conclusively finding that K.S. was victimized by this incident.

125. The School Board reasonably should have modified the class schedule so as to separate S.C. and K.S. as requested, but refused to do so.

126. The School Board was deliberately indifferent when it refused to modify the class schedule to separate S.C. and K.S., causing K.S. to have no other choice but than to suffer being around the child that caused her harm, or withdraw and enroll in virtual school.

127. The School Board was deliberately indifferent when it failed to offer alternative supportive measures, such as school campus escort services, a safety plan, or restrictions on contact between K.S. and S.C.

128. The School Board was deliberately indifferent when approximately two months after the incident, K.S. was in a virtual learning classroom when she was suddenly and without warning placed in a virtual classroom alone with S.C., causing her a traumatic response, including panic, fear, and anxiety.

129. The School Board should have reasonably provided K.S. counseling to deal with the traumatic situation which she experienced at school.

130. The School Board was deliberately indifferent when it refused to provide K.S. counseling following her physical and sexual abuse, especially after knowing that David and Alisha Scoles could not afford to pay for it out of pocket.

131. As a direct and proximate cause of School Board's deliberate indifference, K.S. was denied equal access to educational programs and activities, she was not offered a safe learning environment, and has suffered harm and damages because of this deliberate indifference.

## COUNT II:
### Negligence

132. Plaintiffs re-allege and incorporate by reference all prior and subsequent paragraphs as if fully incorporated herein.

133. All conditions precedent to the bringing of this cause of action have been satisfied or waived, including the notice required by Florida Statute §768.28.

134. At all relevant times, K.S. was enrolled at SPES, which is a school under the control and supervision of School Board.

135. K.S. had a right to not be subject to physical and/or sexual harassment

or abuse while she participated in the school's education program or activity.

136. K.S. had a right to bodily integrity while she participated in the school's education program or activity.

137. At all material times, School Board owed a duty to K.S. to use reasonable care to protect the safety, well-being, and health of K.S. while she was under its care and custody. These duties encompassed the protection and supervision of K.S., and otherwise providing a safe environment for K.S. while on school premises.

138. At all material times, School Board had a duty to reasonably supervise the students placed within their care.

139. At all material times, School Board had a duty to reasonably supervise, notify, and train its employees so that if another student posed a risk to students, School Board would not put another student in harm's way.

140. At all material times, School Board had a duty to take steps to ensure the teachers working with students were notified of concerning behavioral characteristics, and to institute safety measures, as well as training, to deter or prevent a student from being harmed or placed in a dangerous environment.

141. At all material times, School Board had knowledge that S.C. had behavioral difficulties and was a safety risk to other students.

142. Despite having this knowledge, School Board's lack of sufficient training on protocols when dealing with a child experiencing challenges or behavioral difficulties, S.C. was allowed and sent to accompany K.S. to the bathroom, despite School Board's knowledge of S.C.'s present mental state.

143. School Board breached its duty in failing to notify, train, and/or supervise its employees to not place high risk students, such as S.C., with particularly vulnerable students, such as K.S. in a one-on-one setting.

144. School Board breached its duty by exposing K.S. to a reasonably foreseeable injury by failing to use ordinary care when they sent S.C. to the bathroom with K.S.

145. School Board further breached its duty when its teacher did not retrieve the children within a reasonable amount of time.

146. This breach caused K.S. to be harmed while in the bathroom with S.C.

147. As a direct and proximate result of Defendant School Board's acts and/or omissions, Plaintiff K.S. has suffered physical, emotional, and psychological harm, pain and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant on each of the above-referenced claims and Counts as follows:

a. That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

b. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

c. That the Court award pre- and post-judgment interest at the maximum legal rate; and

d. That the Court grant all such other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as a matter of right.

**DATED: April 4, 2023**

/s/ *Lisa D. Haba*
LISA D. HABA
FLORIDA BAR NO.: 077535
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
(844) 422-2529
lisahaba@habalaw.com

/s/ *Michael Barber*
MICHAEL BARBER
FLORIDA BAR NO.: 092252
**LAW OFFICE OF MICHAEL D. BARBER, P.A.**
641 W Fairbanks Ave Ste 101
Winter Park, FL 32789-4765
(407) 890-8000
mbarber@devotedtojustice.com

*Attorneys for Plaintiff*